IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TAN YVETTE SHAKESPEARE,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>METLIFE LEGAL PLANS, INC., and  )<br>PRIME THERAPEUTICS, LLC,  )<br>  )<br>    Defendants.  ) | No. 2:25-cv-02250-TLP-atc<br><br>JURY DEMAND |

**ORDER ADOPTING REPORT AND RECOMMENDATIONS**

In January 2025, pro se Plaintiff Tan Yvette Shakespeare sued MetLife Legal Plans, Inc. ("MetLife") and Prime Therapeutics LLC's ("Prime") (collectively, "Defendants") over a prepaid legal services plan she participated in while working at Prime ("Plan"). (ECF No. 1-1 at PageID 10.) Defendants removed the case to federal court (ECF No. 1) and then moved to dismiss the Complaint (ECF No. 11). Plaintiff opposed the Motion to Dismiss. (ECF No. 14.)

Under Administrative Order No. 2013-05, the Court referred this case to Magistrate Judge Annie T. Christoff for management of all pretrial matters. Judge Christoff then entered a Report and Recommendation ("R&R") recommending that the Court deny Defendants' Motion to Dismiss the breach of contract, bad faith, and negligence claims.[1] (ECF No. 21 at PageID 134.) MetLife timely objected. (ECF No. 31.) And Plaintiff responded. (ECF No. 32.) As

---

[1] Judge Christoff did not rule on the potential discrimination claims under Title VII, § 1981, or the THRA but granted Plaintiff leave to amend her Complaint. (ECF No. 21 at PageID 134.) And so, the Court similarly does not rule on Defendants' Motion to Dismiss Plaintiff's discrimination claims here. After all, the amendment would make the Motion moot.

1

explained below, the Court finds no error in Judge Christoff's analysis and **ADOPTS** the R&R. As a result, the Court **OVERRULES** Defendants' objections and **DENIES** the Motion to Dismiss.

## **LEGAL STANDARD**

A magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain dispositive pretrial matters, including motions to dismiss. *See* 28 U.S.C. § 636(b)(1)(A)–(B). And the district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1). Before the district court adopts or rejects the proposed findings or recommendations, a party may object to them "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). If neither party objects, the district court reviews the R&R for clear error. Fed. R. Civ. P. 72(b) advisory committee's note. But if there is an objection, the district court reviews the objected-to portions of the R&R de novo. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

An objecting party cannot raise new arguments or issues in objections that it did not present to the magistrate court, unless the party has a compelling reason for failing to raise the issue before. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). And any objections must "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). In fact, "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (citing *Miller*, 50 F.3d at 380), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of

vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller*, 50 F.3d at 380)). And so, when a party submits only vague, general, or conclusory objections, the district court may review the R&R for clear error, rather than de novo. *See id.* In any case, the district court need not articulate all its reasons for rejecting a party's objection. *See Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

No party objected to the recommendations allowing the breach of contract and negligence claims to proceed, so the Court reviews those recommendations for clear error. (*See* ECF Nos. 31, 32.) But MetLife timely objected to Judge Christoff's recommendation to deny the Motion to Dismiss as to Plaintiff's bad-faith claim (ECF No. 31), and the Court reviews that section of the R&R de novo.

## DISPOSITION

Having reviewed the record, the Court finds no error with Judge Christoff's conclusions in the R&R. As a result, the Court **ADOPTS** the R&R and **DENIES** Defendants' Motion to Dismiss Plaintiff's breach of contract, bad faith, and negligence claims.

## I.   Background

Plaintiff participated in MetLife's prepaid legal services plan when she worked at Prime. (ECF No. 1–1 at PageID 10.) In January 2025, Plaintiff sued MetLife and Prime after MetLife allegedly failed to provide her legal counsel under the Plan. (*Id*.) She alleged that the Plan "expressly promised legal representation for family law matters, including divorce." (*Id*. at PageID 11.) But when Plaintiff requested counsel to represent her in her divorce, MetLife provided an attorney that allegedly "demonstrated gross unprofessionalism, including consistent lack of communication and failure to execute critical legal tasks in a timely manner." (*Id*.) And

3

the attorney "abruptly withdrew from representation" during "pivotal moments of her divorce proceedings," causing the state court to enter default judgment against her. (*Id*.) As a result, Plaintiff alleges she suffered financial and property loss. (*Id*.) She then sued MetLife for breach of contract and bad faith and both Defendants for negligence and discrimination. (*Id*. at PageID 12.)

Defendants then moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim, arguing that the Employee Retirement Income Security Act of 1974 ("ERISA") preempts the claims and that, even if it did not, Plaintiff has not alleged facts to support her causes of action. (ECF No. 11.) And Plaintiff opposed their motion. (ECF No. 14.) Judge Christoff liberally construed Plaintiff's claims and recommended the Court deny the Motion to Dismiss her breach of contract, bad faith, and negligence claims.[2] (ECF No. 21 at PageID 134.)

MetLife then filed a limited objection to the R&R, arguing that Plaintiff's request for counsel under the Plan falls outside the scope of the bad-faith statute. (ECF No. 31 at PageID 171.) It contends the statute only applies to "insurance contracts that 'bear interest from the time they become due and payable,' such as 'life insurance policies, fire insurance policies, and accident insurance policies.'" (*Id*. (quoting *Crestbrook Ins. Co. v. Crosby*, No. 2:22-cv-2406, 2023 WL 3767085, at *15 (W.D. Tenn. June 1, 2023)).) And because Plaintiff's allegations center on MetLife's denial of legal services rather than a monetary sum, MetLife argues the statute does not apply. (*Id*.) In response, Plaintiff counters that the Plan is "analogous to consumer benefit contracts subject to Tennessee's bad faith statute." (ECF No. 31 at PageID 174.)

---

[2] Rather than rule on Plaintiff's discrimination claims, Judge Christoff granted Plaintiff leave to amend her Complaint to clarify the allegations. (ECF No. 21 at PageID 134.)

4

**II.     Motion to Dismiss Standard**

To survive a motion to dismiss, a plaintiff must allege enough facts to "state a plausible claim to relief." *Bryant v. McDonough*, 72 F.4th 149 (6th Cir. 2023); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Courts must "construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Ashcroft*, 556 U.S. at 678).

What is more, courts "liberally construe[]" pro se pleadings and hold them "to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  But this "lenient treatment . . . has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citation omitted); *see also Orlowski v. Bates*, 146 F. Supp. 3d 908, 921 (W.D. Tenn. 2015) ("Pro se litigants, however, are not exempt from the basic pleading requirements of the Federal Rules of Civil Procedure." (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989))).  Pro se plaintiffs must still plead enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011) (alteration in original) (quoting Iqbal, 556 U.S. at 678).  And district courts are not "required to create" a pro se plaintiff's claim for him. *Payne v. Sec'y of the Treasury*, 73 F. App'x. 836, 837 (6th Cir. 2003).

**III.    Analysis**

In their Motion to Dismiss, Defendants argue that ERISA preempts the state causes of action, thereby precluding these claims.  (ECF No. 11-2 at PageID 69–74; ECF No. 16 at PageID

98–101.)  They also contend that Plaintiff has failed to allege enough facts to state a claim for relief.  (ECF No. 11-2 at PageID 74–78; ECF No. 16 at PageID 101–104.)  And in the objections to the R&R, Defendants argue that the bad-faith statute does not apply to insurance contracts like the one here.  (ECF No. 31.)  The Court will first address the preemption argument before discussing the claims.

### A.      ERISA Preemption

Defendants first contend that Plaintiff's state-law claims "all relate to the alleged denial of benefits under an ERISA-governed plan and as such are expressly preempted by ERISA."  (ECF No. 11-2 at PageID 69.)  In opposition, Plaintiff contends that the Plan meets the "safe harbor" exemption requirements and therefore falls outside ERISA's scope.  (ECF No. 14 at PageID 88.)  Judge Christoff found that it was too early to decide the preemption issue.  (ECF No. 21 at PageID 128–29.)  Because neither party objected to the R&R on this point (*see* ECF Nos. 31, 32), the Court reviews the question under clear error.

ERISA applies to certain "employee welfare benefit plan[s]."  *See* 29 U.S.C. § 1002(1).  And when ERISA applies, it generally preempts state-law claims related to those plans.  *See* 29 U.S.C. § 1144(a); *K.B. v. Methodist Healthcare – Memphis Hosps.*, 929 F.3d 795, 800 (6th Cir. 2019) (explaining that ERISA's preemption statute "displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements" (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988))); *Smith v. Commonwealth Gen. Corp.*, 589 F. App'x 738, 744 (6th Cir. 2014) ("ERISA broadly pre-empts state laws that relate to an employee benefit plan." (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 733 (1985))).  Whether ERISA applies involves "a three-step factual inquiry" about (1) whether the program is exempt from ERISA under the regulatory safe-

harbor exemption; (2) whether there is a "plan" from which a reasonable person could "ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits"; and (3) "whether the employer 'established or maintained' the plan with the intent of providing benefits to its employees." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434–35 (6th Cir. 1996) (citations omitted).  The Court addresses only this first step because the Parties do not dispute the others.

ERISA neither applies nor preempts state law when the offered benefit plan falls within the regulatory safe-harbor exemption.  *See id.*  And the safe-harbor exemption applies when, among other things, "the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit [those premiums] to the insurer." *Id.* at 435 (citing 29 C.F.R. § 2510.3-1(j)). Endorsing a program is "more than merely recommending it," and "[i]t is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture." *Id.* at 436 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133, 1136 (1st Cir. 1995)).  Examples of endorsement may include negotiating policy terms, serving as the plan administrator, referring to ERISA in plan descriptions, or encouraging employee participation in the plan. *Id.* at 435–37.  And courts review the endorsement issue from the perspective of a reasonable employee. *Id.* at 436–37 (citing *Johnson*, 63 F.3d at 1134, 1137 n.6).

Defendants argue that ERISA (and not the safe-harbor) applies here because they endorsed the Plan. (ECF No. 11-2 at PageID 70–71; ECF No. 16 at PageID 98–100.)  For example, according to Defendants, Prime determined employee eligibility, distributed Plan materials, and offered the Plan as the exclusive legal benefit, among other things.  (ECF No. 11-2

7

at PageID 70; ECF No. 16 at PageID 99.)  But these facts provide only limited evidence of endorsement.  *Cf. Thompson*, 95 F.3d at 436–37.  And Judge Christoff correctly explained that these facts, even if true, do not compel finding endorsement as a matter of law.  (ECF No. 21 at PageID 128.)  The Court thus agrees with Judge Christoff that, without more facts about the Plan, Defendants' conduct related to it, and what a reasonable employee would understand about it, finding that Prime endorsed the plan at the motion to dismiss stage is premature.  (*See id.* at PageID 128–29.)

And so, under clear error review, the Court **ADOPTS** the R&R on this issue and **DENIES** Defendants' Motion to Dismiss based on ERISA preemption.

### B.  Failure to State a Claim

Defendants next argue that, even if preemption does not apply, Plaintiff has failed to state a claim for breach of contract, negligence, and bad-faith denial of an insurance claim.[3]  (ECF No. 11-2 at PageID 74–78; ECF No. 16 at PageID 101–104.)  Judge Christoff rejected Defendants' arguments in the R&R.  Neither party objected to the R&R as to the breach of contract and negligence claims, so the Court reviews them for clear error.  (*See* ECF Nos. 31–32.)  But because Defendants objected to the R&R for the bad-faith claim, the Court reviews that cause of action de novo.  (ECF No. 31.)  The Court now addresses each claim.

#### 1.  Breach of Contract

To show breach of contract, a party must allege (1) an enforceable contract, (2) nonperformance of the contract that "amount[s] to a breach," and (3) damages.  *See Bynum v.*

---

[3] Defendants also moved to dismiss Plaintiff's discrimination claims.  But rather than ruling on the Motion to Dismiss for those claims, Judge Christoff granted Plaintiff leave to amend her Complaint related to the Title VII, § 1981, or THRA claims against MetLife or Prime.  (ECF No. 21 at PageID 134.)

*Sampson*, 605 S.W.3d 173, 180 (Tenn. Ct. App. 2020).  Plaintiff alleges this first element by claiming that she opted into the Plan and paid insurance premiums for certain legal services, including legal representation for her divorce proceedings.  (ECF No. 1-1 at PageID 10–11.)  Under the second element, Plaintiff alleges MetLife breached this obligation by providing allegedly inadequate representation.[4]  (ECF No. 1-1 at PageID 11, 19–22.)  Finally, Plaintiff claims that the breach resulted in damages.  She asserts that, because she had incompetent counsel, she defaulted in the divorce proceedings and lost property to which she believes she was entitled.  (ECF No. 1-1 at PageID 11–12.)  Plaintiff's claim for breach of contract against Defendants thus survives because, even though she did not attach the Plan to her Complaint, she has alleged facts supporting each element of her claim.

For these reasons and reviewing for clear error, the Court agrees with Judge Christoff that Plaintiff has alleged a breach of contract claim, **ADOPTS** the R&R on this claim, and **DENIES** Defendants' Motion to Dismiss.

  **2. Negligence**

Plaintiff also asserts a negligence claim against Defendants.  (ECF No. 1 at PageID 12.)  Defendants argue that Plaintiff cannot maintain a separate negligence claim because any duties owed arise solely from a contract or her attorney's professional responsibility duties.  (ECF No. 16 at PageID 103–04.)  But Federal Rule of Civil Procedure 8 allows a plaintiff to plead alternative statements for relief in a complaint.  Fed. R. Civ. P. 8(d).  And as Judge Christoff correctly points out, Defendants "do not concede" that the Plan created duties that could support

---

[4] Despite Defendant's argument that this claim relates to the conduct of Plaintiff's attorney and not of Defendants (ECF No. 11-2 at PageID 74), the Court disagrees.  After all, Plaintiff alleges that Defendants did not provide competent legal representation, or substitute counsel, to fulfill its obligations under the contract.  And this relates to Defendants' actions and not counsel's.

Plaintiff's breach of contract claim, so Plaintiff may proceed with her negligence claim in the alternative. (ECF No. 21 at PageID 131; ECF No. 16 at PageID 103 n.2.) Under clear error review, the Court therefore **ADOPTS** Judge Christoff's R&R and **DENIES** Defendant's Motion to Dismiss.

### 3. Bad Faith Denial of an Insurance Claim

Finally, Plaintiff asserts a claim against MetLife for bad-faith denial of an insurance claim under Tennessee Code Annotated § 56-7-105. (ECF No. 14 at PageID 89.) MetLife argues that Plaintiff failed to state a claim for bad faith because she did not cite the statute in her Complaint. (ECF No. 11-2 at PageID 75.) But Judge Christoff, correctly applying the standard for pro se pleadings, did not find Plaintiff needed to include the statute.[5] (ECF No. 21 at PageID 130.) And this Court agrees.

MetLife also argues that Plaintiff failed to allege the elements of a bad-faith claim. (ECF No. 11-2 at PageID 75–76.) But it is wrong. Under § 56-7-105, a plaintiff must allege

> (1) the policy of insurance must have become due and payable, (2) the insured must have made a formal demand for payment, (3) the insured must have waited 60 days after making [her] demand before suing (unless there was a refusal to pay before the 60-day period ends), and (4) the insurer's refusal to pay must not have been in good faith.

*Builders Mutual Ins. Co. v. GCC Constr., LLC*, 2024 WL 5074878, at *10 (6th Cir. Dec. 11, 2024) (quoting *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)).

---

[5] Even if she needed to cite the statute expressly, the Court would have granted her leave to amend to do so based on her response to the Motion to Dismiss. *See Brown v. Matauszak*, 415 F. App'x 608, 615 (6th Cir. 2011) ("Given the chance to amend and include the information found in his motion for relief from judgment, Brown would have been able to demonstrate a non-frivolous underlying claim and therefore would have properly set for a claim under 42 U.S.C. § 1983."). (*See also* ECF No. 21 at PageID 130 (construing Plaintiff's bad-faith claim as arising under Tenn. Code Ann. § 56-7-105 because of Plaintiff's response and pro se status).)

First, Plaintiff alleges that her right to legal services was "due and payable" because she participated in divorce proceedings, triggering a benefit under the Plan. (ECF No. 1-1 at PageID 10–11.) Second, she alleges that she demanded payment by requesting MetLife provide her with a divorce attorney. (ECF No. 1-1 at PageID 11.) Third, Plaintiff claims MetLife allegedly refused to pay by failing to provide competent counsel or substitute counsel. (ECF No. 1-1 at PageID 11, 15, 19–22.) Fourth, Plaintiff alleges this refusal was in bad faith because she sent multiple emails explaining her situation and requesting counsel. (*Id.*) In response to this final element, MetLife argues that the emails attached to Plaintiff's Complaint show MetLife agreed to pay for an out-of-network attorney, so the Court cannot find bad faith. (ECF No. 11-2 at PageID 76 (citing ECF No. 1-1 at PageID 15).) But Judge Christoff correctly points out that later emails show Plaintiff did not receive this promised substitute counsel, despite her repeated demands. (ECF No. 21 at PageID 130; *see also* ECF No. 1-1 at PageID 19–22.) For these reasons, Judge Christoff correctly found that Plaintiff plausibly alleged enough facts to support a bad-faith claim. (*Id.*)

For its final argument, MetLife contends that the Plan is not the type of insurance contract that falls within the scope of Tenn. Code Ann. § 56-7-105. (ECF No. 31 at PageID 171.) But as Judge Christoff noted in the R&R, MetLife did not argue "that the statute is inapplicable to this type of insurance dispute" in its Motion to Dismiss or related briefs. (ECF No. 21 at PageID 130; *see also* ECF No. 11-2 at PageID 76 ("Plaintiff has not alleged that she made any claim for payment under an insurance policy and has not alleged that [MetLife] refused to make payment, let alone refused to do so in bad faith."); ECF No. 16 at PageID 103 (same).) And an objecting party cannot raise arguments or issues that it did not present to the magistrate court in an objection to an R&R. *Murr*, 200 F.3d at 902 n.1 (explaining that, "absent

11

compelling reasons, [the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*,] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate"). The Court therefore declines to review the argument now,[6] and under de novo review, **ADOPTS** the R&R and **DENIES** MetLife's Motion to Dismiss the bad-faith claim.

## CONCLUSION

For the reasons explained, the Court **ADOPTS** the R&R and **DENIES** the Motion to Dismiss.

**SO ORDERED**, this 22nd day of July, 2025.

                                           s/Thomas L. Parker
                                           THOMAS L. PARKER
                                           UNITED STATES DISTRICT JUDGE

---

[6] Even if the Court did address the argument, it would likely deny the Motion to Dismiss. The statute seems to apply to contracts that "bear interest from the time they become due and payable." *Giles v. Geico Gen. Ins. Co.*, 643 S.W.3d 171, 177 (Tenn. Ct. App. 2021). That likely does not include insurance contracts for legal services. But further factual development about the terms of the Plan would help the Court decide whether the statute applies.