**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**TAN YVETTE SHAKESPEARE**,

     Plaintiff,

     v.                                                                 Case No. 2:25-cv-02250-BCL-atc

**METLIFE LEGAL PLANS, INC. and
PRIME THERAPEUTICS, LLC**,

     Defendants.

---

### ORDER ADOPTING REPORT AND RECOMMENDATION

---

Before the Court are Plaintiff Tan Yvette Shakespeare's objections (Doc. 78) to Magistrate Judge Annie T. Christoff's Report and Recommendation on Motion for Partial Summary Judgment and Motion to Dismiss entered on January 30, 2026. Doc. 77. The Report recommends that Defendant's Motion for Partial Summary Judgment (Doc. 40) and Motion to Dismiss (Doc. 44) be granted in part as to Plaintiff's Section 1981 claim and denied as moot as to the remaining claims.

For the reasons that follow, the Court **OVERRULES** Plaintiffs' objections (Doc. 78) and **ADOPTS** the Report and Recommendation. Doc. 77. Therefore, Defendants' Motion for Partial Summary Judgment is **GRANTED**. Doc. 40. Further, Defendants' Motion to Dismiss the Section 1981 claims is **GRANTED**. The Court **DENIES** as moot any other pending motions in this case. This matter is **DISMISSED** with prejudice. Doc. 77 at 20.

### STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of certain district court duties to magistrate judges. *See United States v.*

*Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869–70 (1989)). For non-dispositive orders, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *See id*. at 151.

## ANALYSIS

The Court has reviewed the Report and Recommendation and the entire record in this matter and finds no error in the Magistrate Judge's analysis or conclusions. Below, the Court addresses Plaintiffs' three objections to the Report and Recommendation: (1) that Magistrate Judge Christoff erred in concluding that the safe harbor exception to the Employee Retirement Income Security Act does not apply; (2) that Magistrate Judge Christoff erred in deeming enforceable a Release that Plaintiff executed upon termination of her employment with Prime; and (3) that Magistrate Judge Christoff erred in dismissing her claim Section 1981 because comparator witnesses exist and discovery was stayed. At the outset, the Court adopts those findings and recommendations not subject to Plaintiff's specific objections. *See id*. at 151.

2

I.    **The Court ADOPTS the Magistrate Judge's conclusion that the ERISA Safe Harbor Exception does not apply.**

Plaintiff was a participant in a prepaid legal services plan offered by Prime and administered by MLP (the "Plan"). Doc. 77 at 2. A major question in this case is whether the Plan is subject to the Employee Retirement Income Security Act (29 U.S.C., Chapter 18), such that Plaintiff's claims are preempted by ERISA.  *See* 29 U.S.C. § 1144(a).

The Magistrate Judge concluded that the Plan was subject to ERISA because, as relevant here, the Plan is not exempt from ERISA under the Department of Labor's "safe harbor" regulations. Doc. 77 at 11. ERISA defines a covered "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ...

29 U.S.C. § 1002(1). The "safe harbor" regulation—which no party here challenges—exempts a plan if four requirements are met, including as relevant here that "[t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and remit them to the insurer." 29 C.F.R. § 2510.3-1(j)(3). The Sixth Circuit has collapsed the concept of Subsection (j)(3)'s limitations on the employer's activities with the related exception to the Safe Harbor for "endorsement," such that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 436 (6th Cir. 1996). "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Id.* at 434.

Magistrate Judge Christoff took an impressionistic approach, concluding that the safe harbor exception did not apply—and thus that ERISA did apply—because: (1) Prime is listed on the Summary Plan Description, (2) the Summary Plan Description states that participants are entitled to rights under ERISA; (3) the Summary Plan Description labels Prime as the plan sponsor and administrator; (4) Prime "determines employee eligibility and provides input on the Plan's design" and, e.g., "distributes enrollment materials to its employees, and communicates at last monthly with MLP about its employees enrolled in the Plan." Doc. 77 at 12-13. According to the Magistrate Judge, "though any one of Prime's actions with respect to the Plan alone may not be sufficient to sustain a finding of endorsement, all of Prime's actions taken together sufficiently establish endorsement under Sixth Circuit law." *Id.*

Plaintiff takes issue with the Magistrate Judge's assessment of many of the relevant factors. For example, she attempts to dismiss the Summary Plan Description entirely because MetLife Legal Plans drafted it; and she likewise relies on the fact that MetLife sent Prime a letter offering to extend the Plan for two years. Doc. 78 at 3-4. But that argument ignores that "the relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view." *Thompson*, 95 F.3d at 436-37. Regardless of who drafted the document, or who initiated the renewal as between the provider and the employer, from the employees' point of view, we have a Summary Plan Description with Prime's name on it, stating that Prime is the Plan Sponsor and Plan Administrator, and stating that the employee will have ERISA rights—all of which demonstrates endorsement. *Id.* at 437. And while Plaintiff makes much of the fact that MetLife indemnified Prime for alleged professional negligence, that loss-allocation provision could not lead a reasonable employee to conclude that Prime was "neutral[ ]" as to the plan, and Plaintiff does not cite any authority to the

4

contrary.  An indemnification agreement does not itself speak to the employer's role in connection with or control over the plan at all—especially not where, as here, the indemnifications ran both ways. Doc. 11-1 at 6.

That leaves Plaintiff relying wholly on two facts: (1) that employees received a MetLife marketing brochure with MetLife branding (Doc. 78 at 4), and (2) that MetLife made the determinations concerning whether specific matters fell within the scope of the Plan (Doc. 78 at 3).[1] These facts, on their own, might be taken to indicate a lack of endorsement.  But here, they are not on their own because, again, the record shows the following undisputed facts that would lead a reasonable employee to recognize a lack of employer neutrality: (1) Prime is listed on the Summary Plan Description, (2) the Summary Plan Description states that participants are entitled to rights under ERISA; (3) the Summary Plan Description labels Prime as the plan sponsor and administrator; (4) Prime "determines employee eligibility and provides input on the Plan's design" and, e.g., "distributes enrollment materials to its employees, and communicates at last monthly with MLP about its employees enrolled in the Plan." Doc. 77 at 12-13. Moreover, the record shows that Prime (5) provided input to MetLife on the Plan's design and (6) determined which employees would be eligible for coverage. Doc. 43-1 at 2, 5.  There is thus "some factual showing on the record of substantial employer involvement in the creation or administration of the plan," *Thompson*, 95 F.3d at 436; indeed, on this record, no reasonable juror could find a lack of endorsement, *DeVooght v. City of Warren*, 157 F.4th 893, 899 (6th Cir. 2025) (A "[g]*enuine*" dispute of fact "exist[s] when the evidence would allow a reasonable jury to rule in favor of the nonmoving party."). *See Nichols v. Standard Insurance Co.*, 48 F. App'x 557, 559 (6th Cir. 2002)

---

[1] Plaintiff also relies on a purported "redlined Summary Plan Description," but she provides no citation to that document and it does not appear to be in the record. Doc. 78 at 4-5.

(in review of summary judgment order, holding record compelled conclusion of endorsement even though insurer made coverage decisions under plan); *Thompson*, 95 F.3d at 437 (listing considerations indicating endorsement).

Finally, Plaintiff invokes "Tennessee's contract of adhesion doctrine," deeming it an "independent basis for [her] claims." Doc. 78 at 5-6. This argument simply talks past the main point: If ERISA preempts Plaintiff's claims, invoking a new state-law basis for those claims does nothing to change the bottom line; Plaintiff has not even purported to cite authority to the contrary. In any event, Plaintiff did not raise this argument before Magistrate Judge Christoff and it is therefore forfeited. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that "absent compelling reasons," the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, "does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

## II.    The Court ADOPTS the Magistrate Judge's Recommendation that the Release supports summary judgment.

Magistrate Judge Christoff also concluded that Defendants are entitled to summary judgment based on a Release executed by Plaintiff at the end of her employment with Prime. Plaintiff objects that the record contains evidence that she lacked capacity to contract at the time she entered the Release. Doc. 78 at 6-7. Plaintiff waived this argument by failing to present it before the Magistrate Judge, where she merely referenced broadly to the distinct doctrine of duress, lack of counsel, and "disability and domestic trauma." Doc. 46 at 15; *see Murr*, 200 F.3d at 902 n.1. And, in any event, nothing in the record would support a claim of lack of capacity. Plaintiff points to a letter from her therapist, but it cannot support a claim of lack of capacity for at least three independent reasons: (1) it is unverified and thus inadmissible and Plaintiff has articulated no argument for rendering it admissible, *see Sutherland v. Mich.  Dep't of Treasury.*, 344 F.3d 603, 619 (6th Cir. 2003); (2) it does not speak specifically, clearly, and based on firsthand

6

knowledge concerning the Release or even the relevant time in which it was executed (Doc. 43 at 19 (discussing reasons Plaintiff "reportedly began treatment" and then-current treatment in 2025)); and (3) it in any event does not describe the sorts of conditions that would allow a reasonable jury to conclude Plaintiff lacked capacity to contract, *see, e.g., Eddie v. Auto Truck Transport Co.*, 2007 WL 1874225, at *6 (W.D. Va. 2007) (in case applying Virginia law, finding on summary judgment that severe depression, supported by doctor's note, did not suffice to create issue for trial on capacity). And Plaintiff's unelaborated argument that the Release could not cover "unknown claims" is contrary to Minnesota law. *See Curtis v. Altria Grp.*, 813 N.W.2d 891, 901 (Minn. 2012) ("A general release of all claims, known and unknown, will be enforced by the court if the intent is clearly expressed."). For this additional and independent reason, Prime is entitled to summary judgment on the claims against it.

### III.   The Court ADOPTS the Magistrate Judge's recommendation to dismiss Plaintiff's claims under Section 1981.

Magistrate Judge Christoff recommended dismissal of Plaintiff's Section 1981 claim for the additional reason that, despite amending her complaint twice and being advised of the governing standard's pleading requirements, she failed to plead facts showing that white colleagues—comparators—were treated more favorable than her. Doc. 77 at 19-20. Plaintiff now argues that (A) she should have been allowed discovery to identify comparators, and (B) she "has identified specific witnesses with firsthand knowledge of differential treatment in comparable circumstances." Doc. 78 at 8-9. These arguments fail because to survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning the facts present "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is only entitled to discovery on a claim if she has first pleaded a claim that "is plausible

on its face" and survives Rule 12(b)(6). *See Joy v. Hardeman Cnty., Tennessee*, No. 121CV01179STAJAY, 2022 WL 1721057, at *5 (W.D. Tenn. May 27, 2022) ("Unfortunately, Plaintiff may not proceed to discovery without alleging some specific facts that give rise to a plausible claim. . . . Without alleging specific facts, discovery becomes an impermissible fishing expedition"); *Mickel v. City of Lansing*, No. 1:23 CV-915, 2023 WL 12092448, at *3 (W.D. Mich. Oct. 11, 2023) ("[Plaintiff] . . . is not entitled to discovery without first stating a plausible claim for relief.").

**CONCLUSION**

Accordingly, the Court **OVERRULES** Plaintiffs' objections (Doc. 78) and **ADOPTS** the Report and Recommendation. Doc. 77. Therefore, Defendants' Motion for Partial Summary Judgment is **GRANTED**. Doc. 40. Further, Defendants' Motion to Dismiss the Section 1981 claims is **GRANTED**. The Court **DENIES** as moot any other pending motions in this case. This matter is **DISMISSED** with prejudice. Doc. 77 at 20.

**IT IS SO ORDERED**, this 20th day of May, 2026.

s/*Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE